JUDGE KOELTL

11 CIV 4062

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF LASALLE COMMERCIAL MORTGAGE SECURITIES TRUST 2007-MF5, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-MF5, ACTING BY AND THROUGH ITS SPECIAL SERVICER MIDLAND LOAN SERVICES, INC., § § § § § § § § § § § § § § § § § § § § Plaintiff, v. BANK OF AMERICA, N.A., Defendant. | RECEIVED JUN 15 2011 U.S.D.C. S.D. N.Y. CASHIERS CIVIL ACTION NO. _____ |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Wells Fargo Bank, N.A., as Trustee for the Registered Holders of LaSalle Commercial Mortgage Securities Trust 2007-MF5, Commercial Mortgage Pass-Through Certificates, Series 2007-MF5, acting by and through its Special Servicer Midland Loan Services, Inc., as and for its Complaint against Defendant Bank of America, N.A., hereby alleges as follows:

## PARTIES

1. Midland Loan Services, Inc. ("Midland") files this action in its capacity as Special Servicer for Wells Fargo Bank, N.A., as Trustee for the Registered Holders of LaSalle

Commercial Mortgage Securities Trust 2007-MF5, Commercial Mortgage Pass-Through Certificates, Series 2007-MF5 (the "Trust"). Wells Fargo Bank, N.A. ("Wells Fargo") is a nationally chartered bank and, for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1348, is a citizen of the State of South Dakota because that is the state in which Wells Fargo has its main office as specified in its Articles of Association.

2. As evidenced by the Official Certification of the Comptroller of the Currency dated October 17, 2008 which is attached hereto as Exhibit A, effective October 17, 2008, LaSalle Bank National Association ("LaSalle") merged with and into Bank of America, National Association ("Bank of America"). By and through this merger, Bank of America became successor-in-interest to LaSalle.

3. Defendant Bank of America is a nationally chartered bank and, for purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1348, is a citizen of the State of North Carolina because that is the state in which Bank of America has its main office as specified in its Articles of Association.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest and costs, and complete diversity of citizenship exists among the parties.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

6. On or about May 23, 2007, LaSalle and LaSalle Commercial Mortgage Securities, Inc. ("LCMSI") signed a Mortgage Loan Purchase and Sale Agreement (collectively with its exhibits and attached hereto as Exhibit B, the "MLPA") dated as of May 23, 2007, providing for

the sale of certain commercial mortgage loans from LaSalle to LCMSI (the "Series 2007-MF5 Loan Pool"). The MLPA states that the mortgage loans comprising the Series 2007-MF5 Loan Pool and sold to LCMSI would be deposited into a trust fund (the "Trust Fund"), that beneficial ownership of the Trust Fund would be distributed by the sale of various classes of mortgage pass-through certificates (the "Certificates", and the holders thereof, the "Certificateholders"), and that one or more real estate mortgage investment conduit elections would be made with respect to the Trust Fund.

7. LaSalle and LCMSI intended that the Trust Fund would be created and the Certificates would be issued pursuant to a Pooling and Servicing Agreement dated as of May 1, 2007 (relevant portions of which are attached hereto as Exhibit C, the "PSA"). The PSA provides that Wells Fargo will serve as the Trustee and Midland will serve as the Special Servicer for the Trust.

8. One of the loans included in the Series 2007-MF5 Loan Pool is Loan Number 63 (the "Loan") made by LaSalle to One Hundred Twelve LLC ("Borrower"), which Loan is evidenced by a Multifamily Note effective as of November 29, 2006 made by Borrower for the benefit of LaSalle in the original principal amount of $2,000,000 (the "Note").

9. To secure repayment of the Loan, Borrower, among other things, executed that certain Multifamily Mortgage, Assignment of Rents and Security Agreement and Fixture Filing effective as of November 29, 2006 (the "Mortgage"). Pursuant to the MLPA, all of the right, title and interest in and to the Mortgage was assigned to the Trust.

### The Loan and the Representations and Warranties in the MLPA

10. The Loan was made subject to and in accordance with the terms of the Mortgage encumbering certain real property known as 205 & 207 North Division & 335 East Ann Street, Ann Arbor, Michigan 48104 as more particularly described in the Mortgage (the "Property").

11. Pursuant to the MLPA and the PSA, the Loan was included as part of the Series 2007-MF5 Loan Pool, sold to LCMSI, and deposited into the Trust. In effecting this transaction, LaSalle made to the Certificateholders, by and through LCMSI as Depositor and Wells Fargo as Trustee for the Trust, certain representations and warranties in Section 6 of the MLPA and Exhibit B to the MLPA.

12. Pursuant to Section 6 of Exhibit B to the MLPA, titled "**Representations and Warranties of the Seller**," LaSalle represented:

> (6)  Each Mortgage Loan is secured by the related Mortgage which establishes and creates a *valid and subsisting first priority lien* on the related Mortgaged Property, or leasehold interest therein, comprising real estate, *free and clear of any liens, claims, encumbrances, participation interests, pledges, charges or security interests* subject only to Permitted Encumbrances....
>
> To the Seller's knowledge, *no person other than the related Mortgagor and the mortgagee own any interest in any payments due under the related leases*....
>
> *[N]o Mortgage Loan is secured by property which secures another Mortgage loan* other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule...

13. Pursuant to Section 8 of Exhibit B to the MLPA, LaSalle represented:

> (8)  The Seller has received an American Land Title Association (ALTA) lender's title insurance policy or a comparable form of lender's title insurance policy (or escrow instructions binding on the Title Insurer (as defined below) and irrevocably obligating the Title Insurer to issue such title insurance policy or a title policy commitment)...*insuring that the related Mortgage is a valid first lien* in the original principal amount of

the related Mortgage Loan on the Mortgagor's fee simple interest...

No holder of the related Mortgage has done, *by act or omission*, anything that would, and the *Seller has no actual knowledge of any other circumstances that would, impair the coverage under such Title Insurance Policy*.

14. Pursuant to Section 10 of Exhibit B to the MLPA, LaSalle represented:

    (10) (a) The Mortgage Loan documents for each mortgage Loan contain enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, *including realization by judicial or non-judicial foreclosure*...

15. Pursuant to Section 24 of Exhibit B to the MLPA, LaSalle represented:

    (24) The origination, servicing and collection practices used by the Seller or, to its knowledge, any prior holder of the related Mortgage Note with respect to such Mortgage Loan have been in all material respects legal and have met customary industry standards.

16. Pursuant to Section 29 of Exhibit B to the MLPA, LaSalle represented:

    (29) The gross proceeds of each Mortgage Loan to the related Mortgagor at origination did not exceed the non-contingent principal amount of the Mortgage Loan and such Mortgage Loan is secured by an interest in real property having a fair market value (1) at the date the Mortgage Loan was originated at least equal to 80% of the original principal balance of the Mortgage Loan or (2) at the Closing Date at least equal to 80% of the original principal balance of the Mortgage Loan on such date; provided that for purposes hereof, the fair market value of the real property interest must first be reduced by (X) the amount of any lien on the real property interest that is senior to the Mortgage Loan...

### The Prior Lien

17. The land records for Washtenaw County, Michigan indicate that a mortgage in favor of Madison Class B Investors LLC dated March 28, 2006 and recorded on March 29, 2006

at Liber 4548, Page 167 (the "Prior Lien"), encumbers the 205 and 207 North Division Street portions of the Property.

18.  The Prior Lien has priority over the lien of the Trust's Mortgage and the title insurer has disclaimed liability for the title defect (a report of liens on the Property is attached to this complaint as <u>Exhibit D</u>, and the letter from Fidelity National Title Insurance Company disclaiming coverage is attached to this complaint as <u>Exhibit E</u>).

19.  LaSalle failed to adhere to customary industry standards by not discovering the Prior Lien and/or resolving the issues pertaining thereto at the Loan's origination.

20.  The existence of the Prior Lien and the absence of available title insurance to cover the defect constitute breach of the foregoing representations and warranties. Moreover, the letter disclaiming coverage shows that LaSalle failed to deliver enforceable title insurance or a binding title commitment with the Mortgage File (as defined in the PSA), thereby materially and adversely affecting the interests of the Certificateholders pursuant to Section 6(e) of the MLPA and Section 2.03(b) of the PSA.

21.  On or about October 1, 2010, pursuant to Section 2.03 of the PSA, Midland, through counsel, gave written notice as directed by the notice provisions in the MLPA and PSA, of these breaches of the foregoing representations and warranties and demanded that LaSalle cure the breaches within ninety (90) days of the date of the letter or repurchase the Note for the Purchase Price (as defined in the PSA).

22.  Midland has received no communication as to curing the breach or repurchasing the Note.

23.  The ninety (90) day window to cure the breaches has passed and all conditions precedent to the filing of this suit have been satisfied.

## FIRST CAUSE OF ACTION
(Specific Performance of Contract)

24. The Trust incorporates by reference the allegations in paragraphs 1 through 23 above as if fully restated herein.

25. Pursuant to Section 6 of the MLPA and Section 2.03 of the PSA, Bank of America[1] is required to cure its breaches of its representations and warranties regarding the Loan or repurchase the Note within ninety (90) days of receiving notice of the breaches.

26. The Trust issued notice of the breaches regarding the Loan in the manner specified in the MLPA and the PSA on or about October 1, 2010, and by not responding to such notice, Bank of America has effectively refused to cure the breaches or repurchase the Note.

27. Pursuant to the PSA and the MLPA, Bank of America's cure of the breaches or repurchase of the Note are the exclusive remedies provided for such breaches of the representations and warranties contained in the MLPA.

28. Because Bank of America has failed to cure, the Certificateholders are entitled to specific performance of Bank of America's contractual obligation to repurchase the Note.

29. The Trust demands specific performance of Bank of America's contractual obligation to repurchase the Note for the Purchase Price, as defined in the PSA.

## SECOND CAUSE OF ACTION
(Damages for Breach of Contract)

30. The Trust incorporates by reference the allegations contained in paragraphs 1 through 29 of this Complaint as if fully set forth herein.

31. Bank of America breached the representations and warranties contained in the MLPA as described herein above.

---

[1] As provided above in ¶ 2 of this Complaint and as evidenced below by Exhibit A, by virtue of LaSalle merging with and into Bank of America effective October 17, 2008, Bank of America is now successor-in-interest to LaSalle.

32.     Pursuant to Section 6 of the MLPA and Section 2.03 of the PSA, Bank of America is required to cure its breaches of its representations and warranties regarding the Loan or repurchase the Note within ninety (90) days of receiving notice of such breaches.

33.     Bank of America has breached Section 6 of the MLPA and Section 2.03 of the PSA because it has refused to repurchase the Note within ninety (90) days of receiving notice of its breaches of the representations and warranties contained in the MLPA.

34.     If not for Bank of America's breaches, the Note would no longer be included in the Trust Fund.

35.     Due to breaches of the representations and warranties in the MLPA, and breach of the PSA by failing to repurchase the Note within ninety (90) days for the Purchase Price (as such term is defined in the PSA), the Certificateholders have suffered damages measured by the outstanding principal balance of such Mortgage Loan (as defined in the PSA) as of the date of purchase, together with all accrued and unpaid interest on such Mortgage Loan at the related Mortgage Rate (as defined in the Mortgage), all related Servicing Advances (as defined in the PSA) that are unreimbursed out of collections from the Mortgage Loan, all accrued and unpaid interest on related Advances (as defined in the PSA) at the Reimbursement Rate (as defined in the PSA), any and all Special Servicing Fees (as defined in the PSA) whether paid or then owing allocable to such Mortgage Loan and all additional Trust Fund expenses in respect of such Mortgage Loan, all Liquidation Fees (as defined in the PSA), and any and all reasonable out-of-pocket expenses reasonable incurred or to be incurred by the Master Servicer, Special Servicer, Depositor and the Trustee in respect of expenses arising out of enforcement of the repurchase obligation, including, without limitations, attorneys' fees and expenses.

36. On behalf of all Certificateholders, the Trust demands judgment against Bank of America for damages, which as of May 13, 2011 equaled approximately $2,426,569.13, plus prejudgment interest, post-judgment interest, attorneys' fees, costs, and other amounts which continue to accrue as part of the Purchase Price.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Wells Fargo Bank, N.A., as Trustee for the Registered Holders of LaSalle Commercial Mortgage Securities Trust 2007-MF5, Commercial Mortgage Pass-Through Certificates, Series 2007-MF5, acting by and through its Special Servicer Midland Loan Services Inc., demands judgment in its favor and against Defendant Bank of America, N.A., and requests that this Court award the following relief:

(a) as to the First Cause of Action, enter an order of specific performance requiring Bank of America to promptly repurchase the Note at the "Purchase Price" as that term is defined in the PSA;[2]

(b) as to the Second Cause of Action, awarding Plaintiff money damages in an amount to be determined at trial, but not less than $2,426,569.13, prejudgment interest, post-judgment interest, attorneys' fees, costs, and other amounts which continue to accrue as part of the Purchase Price;

---

[2] Under the PSA, the "Purchase Price" is defined as:

> "a price equal to: (i) the outstanding principal balance of such Mortgage Loan as of the date of purchase; plus (ii) all accrued and unpaid interest on such Mortgage Loan at the related Mortgage Rate…; plus (iii) all related Servicing Advances that are unreimbursed out of collections from the Mortgage Loan and accrued and unpaid interest on related Advances at the Reimbursement Rate, and any Special Servicing Fees…and all additional Trust Fund expenses in respect of such Mortgage Loan, if any; plus (iv) …all reasonable out-of-pocket expenses reasonably incurred or to be incurred by the Master Servicer, the Special Servicer, the Depositor and the Trustee in respect of the Breach of Defect giving rise to the repurchase obligation, including, without limitation, all legal fees and expenses of the Trust Fund relating to such Mortgage Loan; plus (v) Liquidating Fees, if any, payable with respect to such Mortgage Loan."

(c)   awarding Plaintiff the costs and disbursements of this proceeding, including reasonable attorney's fees; and,

(d)   granting such other and further relief to Plaintiff as this Court deems just, proper and equitable.

Respectfully submitted,

*[signature]*

Brent W. Procida
New York Bar No. 2720167
VENABLE LLP
750 E. Pratt Street, Suite 900
Baltimore, Maryland 21202
(410) 244-7862 (Telephone)
(410) 244-7742 (Facsimile)

COUNSEL FOR WELLS FARGO BANK, N.A., AS TRUSTEE FOR THE REGISTERED HOLDERS OF LASALLE COMMERCIAL MORTGAGE SECURITIES TRUST 2007-MF5, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-MF5, ACTING BY AND THROUGH ITS SPECIAL SERVICER MIDLAND LOAN SERVICES, INC.

# EXHIBIT A

**EXHIBIT A**

## ASSISTANT SECRETARY'S CERTIFICATE

## OF

## BANK OF AMERICA, NATIONAL ASSOCIATION

The undersigned, Nathan A. Barth, an Assistant Secretary of Bank of America, National Association (the "Association"), a national banking association organized and existing under the laws of the United States of America and having its principal place of business in the City of Charlotte, County of Mecklenburg, State of North Carolina, does hereby certify that:

1. Effective April 30, 1999, **LaSalle Bank National Association**, Chicago, Illinois, Charter Number 14450, merged with and into **LaSalle National Bank**, Chicago, Illinois, Charter Number 14362, under the charter of the latter and title of the former.

2. Effective October 17, 2008, **LaSalle Bank National Association**, Chicago, Illinois, Charter Number 14362 merged into and under the charter and title of **Bank of America, National Association**, Charlotte, North Carolina, Charter Number 13044.

IN WITNESS WHEREOF, I have hereupon set my hand and affixed the seal of said Association the 21st day of October, 2008.

(SEAL)

_____
Nathan A. Barth
Assistant Secretary



**Comptroller of the Currency
Administrator of National Banks**

Large Bank Licensing
Mail Stop 7-13
250 E Street, SW
Washington, DC 20219

October 17, 2008

Ms. Rhadi Thayu
Assistant General Counsel
Bank of America, National Association
40 W. 57th Street
New York, New York 10019

Re: Applications to merge LaSalle Business Credit, LLC, Chicago, Illinois with and into LaSalle Bank National Association, Chicago, Illinois, and upon consummation of that transaction, to merge LaSalle Bank National Association and LaSalle Bank Midwest National Association, Troy, Michigan, with and into Bank of America, National Association, Charlotte, North Carolina.

Application Control Numbers: 2008-ML-02-0006 and 2008-ML-12-0171

Dear Ms. Thayu:

This letter is the official certification of the Office of the Comptroller of the Currency for LaSalle Business Credit, LLC, Chicago, Illinois to merge with and into LaSalle Bank National Association, Chicago, Illinois, effective October 16, 2008.

This is also the official certification of the Office of the Comptroller of the Currency for LaSalle Bank National Association, Chicago, Illinois, and LaSalle Bank Midwest National Association, Troy, Michigan to merge with and into Bank of America, National Association, Charlotte, North Carolina, effective October 17, 2008.

This letter is also the official authorization for Bank of America, National Association to operate the former main and branch offices of LaSalle Bank, National Association and LaSalle Bank, Midwest, National Association as branches of Bank of America, National Association.

If you have questions regarding this letter, please contact me at (202) 874-5294. Please reference the application control number in any correspondence.

Sincerely,

*[signature]*

Stephen A. Lybarger
Large Bank Licensing Lead Expert

**EXHIBIT B**

**EXECUTION COPY**

LASALLE COMMERCIAL MORTGAGE SECURITIES, INC.,

PURCHASER

LASALLE BANK NATIONAL ASSOCIATION,

SELLER

MORTGAGE LOAN PURCHASE AGREEMENT

Dated as of May 23, 2007

Fixed Rate and Adjustable Rate Mortgage Loans

Series 2007-MF5