```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
WELLS FARGO BANK, N.A., as Trustee for the                    :
Registered Holders of LaSalle Commercial Mortgage             :
Securities Trust 2007-MF5, Commercial Mortgage                :
Pass-Through Certificates, Series 2007-MF5, acting            :
by and through its Special Servicer MIDLAND                   :
LOAN SERVICES, INC.,                                          :
                                    Plaintiff,                :
                                                              :
                     -against-                                :
                                                              :       11 Civ. 4062 (JPO)
BANK OF AMERICA, N.A.,                                        :
                                    Defendant/Third-          :       MEMORANDUM AND
                                    Party Plaintiff,          :            ORDER
                                                              :
                     -against-                                :
                                                              :
FIDELITY NATIONAL TITLE INSURANCE                             :
COMPANY, successor by merger to LAWYERS                       :
TITLE INSURANCE CORPORATION,                                  :
                                    Third-Party               :
                                    Defendant.                :
                                                              :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

      Wells Fargo Bank N.A. ("Wells Fargo" or "Plaintiff"), as Trustee for the Registered Holders of LaSalle Commercial Mortgage Securities Trust 2007-MF5, Commercial Mortgage Pass-Through Certificates, Series 2007-MF5 ("the Trust"), acting by and through its Special Servicer Midland Loan Services, Inc. ("Midland"), brought this action against Bank of America, N.A. ("BOA" or "Defendant"), as the successor by merger to LaSalle Bank National Association ("LaSalle"), for breach of contract.  Subsequently, BOA brought a third party action against its insurer, Fidelity National Title Insurance Company ("Fidelity"), successor by merger to Lawyers Title Insurance Corporation ("Lawyers").  Before this Court are Wells Fargo's Motion for

Summary Judgment, BOA's Cross-Motion for Partial Summary Judgment, and Fidelity's Motion to Dismiss.  For the reasons that follow, Wells Fargo's Motion is granted, BOA's Cross-Motion is denied, and Fidelity's Motion is denied.

## I.      Background

### A.      Factual Background

#### 1.      BOA Makes and Sells the Loan

On or about November 29, 2006, BOA made a loan to One Hundred Twelve, LLC ("the Borrower"), in the amount of $2,000,000 ("the Loan"), in connection with the Borrower's purchase of certain properties in Michigan ("the Property"), including one on North Division Street in Ann Arbor ("the Division Street Parcel").[1]  In connection with the Loan, the Borrower executed a mortgage, dated November 29, 2006 and recorded on December 4, 2006, which encumbered the Property ("the Mortgage").  Pursuant to a Mortgage Loan Purchase Agreement, dated May 23, 2007 ("the MLPA"), BOA sold the Loan to an affiliate.   Pursuant to the terms of a Pooling and Servicing Agreement, dated May 1, 2007 ("the PSA"), the Loan, along other mortgages, was deposited into the Trust, of which Wells Fargo was to serve as the Trustee and Midland the Special Servicer.

#### 2.      The MLPA

Exhibit B to the MLPA contains various "Representations and Warranties of the Seller" ("RWs") concerning the loans to be sold, including as follows:

> (6) Each Mortgage Loan is secured by the related Mortgage which establishes and creates a valid and subsisting first priority lien on the related Mortgaged Property, or a leasehold interest therein, comprising real estate, free and clear of any liens, claims,

---

[1] The Loan was actually made by LaSalle, but this opinion conflates LaSalle and BOA for simplicity's sake.  Similarly, while Lawyers issued the relevant title insurance, this Court refers to Lawyers as Fidelity, its successor.

2

> encumbrances, participation interests, pledges, charges, or security interests subject only to Permitted Encumbrances. . . . To the Seller's knowledge, no person other than the related Mortgagor and the mortgagee own any interest in any payments due under the related leases. . . . [N]o Mortgage Loan is secured by property which secures another Mortgage loan other than one or more Mortgage Loans as shown on the Mortgage Loan Schedule . . . .
>
> (8) The Seller has received an American Land Title Association (ATLA) lender's title insurance policy or a comparable form of lender's title insurance policy (or escrow instructions binding on the Title Insurer (as defined below) and irrevocably obligating the Title Insurer to issue such title insurance policy or a title policy commitment or pro-forma "marked up" at the closing of the related Mortgage Loan and countersigned or otherwise approved by the Title Insurer or its authorized agent) . . . insuring that the related Mortgage is a valid first lien in the original principal amount of the related Mortgage Loan on the Mortgagor's fee simple interest . . . . No holder of the related Mortgage has done, by act or omission, anything that would, and the Seller has no actual knowledge of any other circumstances that would, impair the coverage under such Title Insurance Policy. . . .
>
> (10)    (a) The Mortgage Loan documents for each Mortgage Loan contain enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the practical realization against the Mortgaged Property of the principal benefits of the security intended to be provided thereby, including the realization by judicial or non-judicial foreclosure . . . .

The MPLA also speaks to the remedy for any breaches of the MPLA:

> Upon notice [as defined by the MLPA], the Seller shall, not later than 90 days from . . . the Seller's receipt of the notice . . . (i) cure such Defect or Breach, as the case may be, in all material respects, or (ii) repurchase the affected Mortgage Loan at the applicable Repurchase Price [as defined by the MLPA] or (iii) substitute a Qualified Substitute Mortgage Loan [as defined by the MLPA] for such affected Mortgage Loan (provided that in no event shall any such substitution occur later than the second anniversary of the Closing Date) . . . .
>
> The Seller's obligation to cure any breach or repurchase or substitute for the affected Mortgage Loan pursuant to Section 6 shall constitute the sole remedy available to the Purchaser in connection with a breach of any of the Seller's representations and

3

>warranties contained in this Section 6 and it is acknowledged and agreed that the representations and warranties are being made for risk allocation purposes only . . . .

(§§ 6(e), 6(g).)

### 3.     The Previous Encumbrance and the Trust's Demand

As it turns out, Madison Class B Investors LLC ("Madison") had executed an earlier mortgage, dated March 28, 2006 and recorded March 29, 2006 ("the Madison Mortgage"), on the Division Street Parcel.  On October 28, 2010, the Madison Mortgage was foreclosed by auction, and the Parcel was conveyed free and clear of the Trust's lien by Sheriff's Deed that same day.

### 4.     Fidelity

On October 19, 2006—which is to say, prior to the execution of the Loan—BOA received a Commitment of Title Insurance ("the Title Commitment") from Fidelity National Title Insurance Company ("Fidelity"), providing that Fidelity was required to ensure the "[d]ischarge of the mortgage executed by One Hundred Twelve LLC, a Michigan limited liability company to Madison Class B Investors LLC, a Michigan limited liability company, in the original amount of $15,190,000.00 dated March 28, 2006 and recorded March 29, 2006 in Liber 4548, Page 167."

On November 1, 2006, Fidelity provided BOA with a Closing Protection Letter ("the CPL").   The CPL states that Fidelity "agrees to reimburse [BOA] for actual losses incurred by [BOA] in connection with said closing" of the Loan when such losses arise from, *inter alia*, a

>[f]ailure of Policy Issuing Agent to comply with your written instructions to the extent that they relate to (a) the status of the title of said interest in land or the validity, enforceability and priority of the lien of said mortgage on said interest in land, including the obtaining of documents and the disbursement of funds necessary to establish such status of title or lien.

4

BOA had instructed its Policy Issuing Agent, Main Street Title, that it must ensure the "first lien status of Lender's Mortgage." The Supplemental Instructions further required "[Main Street Title] to make sure . . . [that BOA] must have the 1st and only lien against the subject property."

BOA purchased title policy No. G47-3829817 from Fidelity on December 4, 2006 ("the Title Policy"). The Title Policy insures against "loss or damage . . . sustained or incurred by the Insured for reason of," *inter alia*, "[t]he priority of any lien of encumbrance over the lien of the insured mortgage." However, the Title Policy explicitly excepts from coverage the "[m]ortgage, and the terms, conditions and provisions contained therein, executed by One Hundred Twelve LLC . . . to Madison . . . ."

B.     **Procedural Background**

Wells Fargo commenced this action on June 15, 2011. (Dkt. No. 1 ("Compl.").) BOA answered on September 9, 2011. (Dkt. No. 11 ("Ans.").) On May 7, 2012, Wells Fargo moved for summary judgment. (Dkt. No. 58 ("Wells Fargo Mem.").) BOA opposed and cross-moved for summary judgment on June 8, 2012. (Dkt. No. 67 ("BOA Mem.").) Wells Fargo replied and opposed BOA's motion on June 29, 2012. (Dkt. No. 74 ("Wells Fargo Rep.").) BOA replied on July 9, 2012. (Dkt. No. 77 ("BOA Rep.").)

BOA filed a Third Party Complaint against Fidelity on September 23, 2011, and then an Amended Third Party Complaint on December 13, 2011. (Dkt. No.13; Dkt No. 29 ("Am. TPC").) Fidelity moved to dismiss the Amended Third Party Complaint on December 23, 2011. (Dkt. No. 32 ("Fidelity Mem.").) BOA opposed and cross-moved for partial summary judgment

on January 30, 3012. (Dkt. No. 38 ("BOA Opp'n.").)[2] Fidelity replied on March 3, 2012. (Dkt. No. 43 ("Fidelity Rep.").)

## II.     Fidelity's Motion to Dismiss

BOA's Amended Third Party Complaint seeks a declaratory judgment that Fidelity has a duty to indemnify BOA, as well as damages for Fidelity's breach of the Title Policy. In the alternative, BOA seeks a reformation of the Title Policy. Fidelity has moved to dismiss the Amended Third Party Complaint.

### A.     Motion to Dismiss Standard

To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). At the motion to dismiss stage, a district court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *Miller v. Wolpoff & Abramson, L.L.P.,* 321 F.3d 292, 300 (2d Cir. 2003) (citation omitted). However, "[w]here, as in this case, certain contracts are integral to the complaint, we also consider those documents in deciding the merits of the motion." *Interpharm, Inc. v. Wells Fargo Bank*, 655 F.3d 136, 141 (2d. Cir 2003) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-54 (2d Cir 2002)).

---

[2] Because Fidelity has agreed to defend BOA, Count I of BOA's Amended Complaint is now moot. Thus, this Court need not consider BOA's cross-motion for summary judgment nor the portion of Fidelity's motion to dismiss pertaining to its duty to defend. (Dkt. No. 80; Dkt. No. 81.)

B.      **Interpreting Contracts under New York Law**

"Under New York law, insurance policies are interpreted according to general rules of contract interpretation." *Olin Corp. v. Am. Home Assur. Co.*, 2012 WL 6602909, at *6 (2d Cir. Dec. 19, 2012). An insurance contract must be interpreted "so that a clear and unambiguous policy provision is given its plain and ordinary meaning." *Dalton v. Harleysville Worcester Mut. Ins. Co.*, 557 F.3d 88, 90 (2d Cir. 2009) (citation omitted); *accord Ace Wire & Cable Co., Inc. v. Aetna Cas. & Sur. Co.*, 457 N.E.2d 761, 764 (N.Y. 1983) ("The tests to be applied in construing an insurance policy are common speech and the reasonable expectation and purpose of the ordinary businessman." (internal citations omitted).) The Second Circuit has explained that "[a]n ambiguity exists where the terms of an insurance contract could suggest 'more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Morgan Stanley Grp. Inc. v. New England Ins Co.*, 225 F.3d 270, 275 (2d Cir. 2000) (citation omitted); *see also United States Fire Ins. Co. v. General Reins. Corp.*, 949 F.2d 569, 572 (2d Cir.1991) ("As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading."). By contrast, "ambiguity does not exist simply because the parties urge different interpretations." *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 617 (2d Cir. 2001) (citation and internal quotation marks omitted).

When interpreting unambiguous contract terms, "[e]vidence outside the four corners of the document . . . is generally inadmissible to add to or vary the writing.'" *W.W.W. Assocs., Inc v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990). However, if the meaning of the contract is not clear from its face, the court next looks to extrinsic evidence. *See Olin Corp.*, 2012 WL

7

6602909, at *6 ("If the plain language of the document is not clear, courts may consider extrinsic evidence to ascertain the parties' intent at the formation of the contract.") (citation omitted). Next, "if the extrinsic evidence fails to establish the parties' intent, courts may apply other rules of contract interpretation . . . ." *Id*.

Thus, "[w]here a contract's language is clear and unambiguous, a court may dismiss a breach of contract claim on a Rule 12(b)(6) motion to dismiss." *Maniolos v. United States*, 741 F. Supp. 2d 555, 567 (S.D.N.Y. 2010) (collecting cases). However, because the court may consider extrinsic evidence where the contract is not clear on its face, contracts that are facially ambiguous should not be resolved on the pleadings. *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC,* 692 F.3d 42, 55 (2d Cir. 2012) (explaining that "where the contract language creates ambiguity, extrinsic evidence as to the parties' intent may properly be considered, and in the context of a motion to dismiss, if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state a claim." (internal quotation marks and citations omitted)); *see also Wurtsbaugh v. Banc of Am. Sec. LLC,* No. 05 Civ. 6330 (DLC), 2006 WL 1683416 at *5 (S.D.N.Y. June 20, 2006) ("Where a contract term is ambiguous and material to the breach of contract claim, the claim may not be dismissed for failure to state a claim.").

### C.    The Title Policy and the CPL

The Title Policy, indisputably a contract between BOA and Fidelity, explicitly excepts from coverage the "[m]ortgage, and the terms, conditions and provisions contained therein, executed by One Hundred Twelve LLC . . . to Madison . . . ." According to BOA, however, Fidelity nonetheless had a contractual obligation to ensure that BOA had the first lien status. BOA points to the CPL, an earlier document, which provides that Fidelity will reimburse for

actual losses incurred by BOA as a result of failure of the Policy Issuing Agent to comply with written closing instructions relating to priority of the lien. As BOA notes, BOA's instructions to Main Street Title specifies that BOA was to be first lien holder.

A CPL is a document in which "the underwriter agrees to indemnify the lender for any problems that arise from the closing agent's failure to properly apply the funds, as set forth in the closing instructions, and the title insurance commitment." *Bergin Fin., Inc. v. First Am. Title Co.*, 397 Fed. Appx. 119, 125 (6th Cir. 2010) (quoting *Ticor Title Ins. Co. v. Nat'l Abstract Agency, Inc.,* No. 05 Civ. 73709, 2008 WL 2157046, at *5 (E.D. Mich. May 22, 2008)); *see also Metmor Fin., Inc. v. Commonwealth Land Title, Ins. Co.* 645 So. 2d 295, 297 (Ala. 1993) ("The purpose of the closing service letter is to provide indemnity against loss due to a closing attorney's defalcation or failure to follow a lender's closing instructions.") Typically, CPLs are "only issued in connection with a title insurance policy or expected policy." *Fleet Mortgage Corp. v. Lynts*, 885 F. Supp. 1187, 1190 (E.D. Wisc. 1995); *accord Freedom Mortg. Corp. v. Burnham Mortg., Inc.,* 720 F. Supp. 2d 978, 1003 (N.D. Ill. 2010); *Metmor Fin., Inc.*, 645 So. 2d at 297 ("[T]he CPL is a contract of indemnification and specific liability, not an insurance policy."); *Nat'l Mtg. Warehouse, LLC v. Bankers First Mtg., Co.*, 190 F. Supp. 2d 774, 783 (D. Md. 2002) ("[T]he issuance of a title insurance policy is generally necessarily for liability to ensue under a [CPL]." (citation omitted)).

Given the uncertain nature of the relationship between a given a Title Policy and a CPL, some courts have held that a breach of contract claim under the CPL should not be dismissed prior to discovery. *See, e.g.*, *Flick Mortg. Investors, Inc. v. Chicago Title Ins. Co.*, No. 03 Civ. 125 (MR) (DSC), 2009 WL 6506863, at *3 (W.D.N.C. June 18, 2009) (Report and Recommendation), *adopted by GMAC v. Flick Mortg. Investors, Inc.*, 2010 WL 2132184

(S.D.N.Y. May 5, 2010). This course of action seems consonant with New York law. As the Second Circuit has noted, New York law provides that "all writings which form part of a single transaction and are designed to effectuate the same purpose [must] be read together, even though they were executed on different dates and were not all between the same parties." *TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 89 (2d Cir. 2005) (quoting *This is Me, Inc. v. Taylor,* 157 F.3d 139, 143 (2d Cir.1998)). When "the documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the court." *Id* (citation omitted). However, because the question whether two agreements should be construed as one "depends upon the intent of the parties," it is "typically a question of fact for the jury." *Id*. (citations omitted).

Moreover, for this Court to hold that the language of the CPL is not binding on Fidelity as a matter of law would appear to directly contravene the majority of case law considering the relationship between a CPL and a Title Policy. *See, e.g., JP Morgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 795 F. Supp. 2d 624, 629 (E.D. Mich. 2011) (determining that "the closing protection letter provides the addressee with certain additional assurances independent of the underwriter's duties under the title policy") (citation omitted)); *see also Sears Mortgage Corp. v. Rose*, 634 A.2d 74, 85-88 (N.J. 1993) (holding that while a CPL does not constitute a separate insurance agreement, it is integrated into the insurance policy).

Thus, at this stage of the litigation, this Court is not able to determine that the parties did not intend the CPL and the Title Policy to be read as a single contract. By extension, it must be assumed, as BOA has alleged, that the CPL is integrated into the Title Policy.[3]

---

[3] Because it must be assumed at this point of the litigation that the CPL and the Title Policy are integrated, the Title Policy's provision that "[n]o amendment or endorsement to this policy can

Next, this Court must determine whether, construing the Title Policy and CPL as one contract, the agreement between the parties is clear on its face. The briefest glimpse indicates that it is not. While the Title Policy explicitly excepts from coverage the "[m]ortgage, and the terms, conditions and provisions contained therein, executed by One Hundred Twelve LLC . . . to Madison . . . ," the CPL indemnifies BOA for its agent's "[f]ailure of Policy Issuing Agent to comply with your written instructions." Those instructions directed Main Street to ensure "first lien status of Lender's Mortgage." Because these provisions are facially at odds, it would be inappropriate to determine the meaning of the agreement as a matter of law at this stage of the litigation.[4]

Therefore, Fidelity's Motion to Dismiss is denied.

## III.   Wells Fargo's and BOA's Cross-Motions for Summary Judgment

Wells Fargo seeks summary judgment on its claim for specific performance, or in the alternative, damages for breach of contract. BOA opposes summary judgment as to certain alleged breaches and seeks summary judgment as to one alleged breach.

### A.   Motion For Summary Judgment Standard

"Pursuant to Federal Rule of Civil Procedure 56, summary judgment 'is appropriate when the evidence shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.'" *Borghese Trademarks, Inc. v. Borghese*, No. 10 Civ.

---

be made except by a writing endorsed hereon or attached hereto signed by . . . [an] authorized signatory of the Company" is simply not relevant.

[4] And again, while certain canons of contract interpretation—such as *contra proferentem* or that where is there is "inconsistency between a specific provision and a general provision of a contract . . . the specific provision controls," *Muzak Corp. v. Hotel Taft Corp.*, 133 N.E.2d 688, 690 (N.Y. 1956)—may shed light on the meaning of the parties' agreement, this Court is generally not permitted under New York law to employ those rules at this stage of the litigation: i.e., in interpreting an ambiguous contract prior to considering extrinsic evidence. *See supra* section II.B.

5552 (JPO) (AJP), 2013 WL 143807, at *6 (S.D.N.Y. Jan. 14, 2013) (citation omitted). The non-moving party must respond to the adverse party's pleading with "specific facts showing that there is a genuine issue for trial." *Ricci v. Stefano*, 557 U.S. 557, 586 (2009) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). An issue of fact is "genuine" if the evidence presented "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The initial burden of a movant is to provide evidence on each material element of his claim or defense illustrating his entitlement to relief. *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248.

"On summary judgment the inferences to be drawn from the underlying facts contained in such materials must be viewed in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). A motion for summary judgment prevails "[o]nly when no reasonable trier of fact could find in favor of the nonmoving party." *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir. 2000) (citing *Taggart v. Time, Inc.* 924 F.2d 43, 46 (2d Cir. 1991)); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). The nonmoving party must advance more than mere "conclusory statements, conjecture, or speculation" to successfully defeat a motion for summary judgment. *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996) (citing *Matsushita*, 475 U.S. at 587); *see also Anderson*, 477 U.S. at 249-50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." (internal citations omitted)).

B.     **Breach of the MPLA**

Wells Fargo contends that Defendant has undisputedly breached RWs 6, 8, and 10(a). BOA argues that genuine issues of material fact preclude summary judgment with respect to the alleged breaches of RWs 6 and 10(a), and that RW 8 was not breached as a matter of law.

A buyer may hold a seller accountable for breach of an express warranty upon "showing of the following four elements to prevail on a breach-of-warranty claim: '(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant.'" *LaSalle Bank Nat. Ass'n. v. Merrill Lynch Mortg. Lending, Inc.*, No. 04 Civ. 5452 (PKL), 2007 WL 2324052, at *8 (S.D.N.Y. Aug. 13, 2007) (quoting *Promuto v. Waste Mgmt., Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999)). If a buyer makes such a showing, "plaintiff is entitled to be indemnified for any damages incurred as a result of such breach." *Id.* (quoting *Promuto*, 44 F. Supp. 2d at 642).

It is undisputed that the parties in this case entered into a contract, that the contract contained warranties, and that those warranties were a basis of the bargain. The only question in this case is whether the warranties at issue were breached.

RW 6 provides that each mortgage loan "establishes and creates a valid and subsisting first priority lien on the related Mortgaged Property . . . comprising real estate, free and clear of any liens, claims, encumbrances, participation interests, pledges, charges, or security interests subject only to Permitted Encumbrances . . . ." RW 10(a) warrants that the "rights and remedies of the holder . . . include[d] the realization by judicial or non-judicial foreclosure." BOA does not dispute that the Madison Mortgage encumbered the Division Parcel in March 2006, before

the Parcel was encumbered by BOA's Mortgage. Moreover, it is beyond dispute that Madison had the right to foreclosure and that it acted on that right.

Nonetheless, BOA contends that it did not breach RWs 6 and 10(a) because "[BOA] intended the BOA Mortgage to be a first lien on the Properties and that the BOA Mortgage was entitled to be subrogated to a first lien position ahead of the Madison [Mortgage]." (BOA Mem. at 14.)

BOA's potential right to equitable subrogation, however, fails to demonstrate that BOA has not breached RWs 6 and 10(a). Equitable subrogation is simply "a legal fiction through which a person who pays a debt for which another is primarily responsible is substituted or subrogated to all the rights and remedies of the other." *Hartford Accident & Indemnity Co. v. Used Car Factory, Inc.*, 600 N.W.2d 630, 632 (1999). Contrary to BOA's assertion, a party that has a right to be subrogated to a first lien position does not retroactively have "a first lien" on the property at issue. (BOA Mem. at 17.) Moreover, even if BOA could show at trial that it was entitled to be subrogated to a first lien position on the Division Parcel, it cannot show that the Loan in fact was "free and clear of any liens [or] encumbrances" at the time it sold the Loan to the Trust;[5] nor can it show, of course, that Wells Fargo had the ability to foreclose on the property and realize the benefits of a party with a first lien. As BOA notes in its own brief, "where terms of [a] contract are clear and unambiguous, [the] contract is entitled to be enforced according to its terms." (BOA Mem. at 20 (citing *Uribe v. Merchants Bank of N.Y.*, 693 N.E.2d 740, 743 (N.Y. 1998)). Here, the clear and unambiguous language of the contract indicates that,

---

[5] Indeed, in BOA's Rule 56.1 Statement in Support of Its Cross-Motion for Summary Judgment against Fidelity states that it is an undisputed fact that "the Madison Lien encumbers the [Division Street Property]." (Dkt. No. 39 at ¶ 6.) It is hard to see how BOA can admit that the property is encumbered while also contending it has not breached its warranty to be "free and clear of any liens [or] encumbrances."

irrespective of whether this Court determines that BOA should be equitably subrogated to the first lien position, BOA is already and inalterably in breach.[6]

### C. Remedy

The Court next must decide whether to award Wells Fargo specific performance (i.e., by requiring BOA to take possession of the Loan) or damages attributable to the loss of the Trust's lien against the Division Parcel.

In some circumstances, "[s]pecific performance is an appropriate remedy in a breach of contract claim." *Schanfield v. Sojitz Corp. of Am.*, 663 F. Supp. 2d 305, 348 (S.D.N.Y. 2009) (citations omitted). More specifically, "[u]nder New York law, which applies here, a party can be compelled to perform its contractual obligations if (1) there is a valid contract; (2) plaintiff has substantially performed under the contract and is willing and able to perform its remaining obligations; (3) defendant is able to perform its obligations; and (4) plaintiff has no adequate remedy at law." *LaMirada Prods Co. v. Wassell PLC*, 823 F. Supp. 138, 140 (S.D.N.Y. 1993) (citations omitted); *see also Leasco Corp. v. Taussig*, 473 F.2d 777, 786 (2d Cir. 1973) ("Before specific performance may be ordered, remedies at law first should be determined to be incomplete and inadequate to accomplish substantial justice." (citations omitted)).

When specific performance is contemplated by the contract, courts tend to find that irreparable harm would be suffered unless specific performance is granted. *See Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (holding that a provision in a contract providing for injunctive relief "might arguably be viewed as an admission by [defendant] that plaintiff will suffer irreparable harm were he to breach the contrac[t] . . . ."); *see also Bank of Am., N.A. v. PSW NYC LLC*, 29 Misc.3d 1216(A), at *11-12 (N.Y. Sup. 2010) (the fact that the parties'

---

[6] Because this Court has determined that RWs 6 and 10(a) have been breached, it is unnecessary to reach the question whether RW 8 has also been breached.

contract provided for equitable relief implied that monetary damages would be inadequate); *Rhode v. Davis*, No. 08 Civ. 9681 (GBD), 2012 WL 4471515, at *2 (S.D.N.Y. Sept. 27, 2012) ("Here, the Stipulation was an unambiguous and enforceable contract containing the complete terms of their agreement. . . . Thus, specific performance . . . is appropriate.")

And indeed, such a presumption is consonant with the general rule that where parties, especially parties as sophisticated as in this case, "set down their agreement in a clear, competent document, their writing should as a rule be enforced according to its terms." *W.W.W. Assocs.*, 566 N.E.2d at 642; *see also PSW NYC* LLC, 29 Misc.3d 1216(A), at *11 (explaining that "[t]his rule [that contracts should be enforced according to their terms] has special import in the context of real property transactions, where commercial certainty is a paramount concern, and where . . . the instrument was negotiated between sophisticated, counseled business people negotiating at arm's length" (citation and internal quotation marks omitted)).

The MPLA provides that BOA's "obligation to cure any breach or repurchase or substitute for the affected Mortgage Loan pursuant to Section 6 shall constitute the sole remedy available to the Purchaser in connection with a breach of any of the Seller's representations and warranties in this Section . . . ." It is plain that the parties contemplated that BOA would repurchase any loans for which RWs were breached; indeed, it is the "sole remedy" available under the contractual language. The Court concludes, based on the undisputed facts, that specific performance is the appropriate remedy in this case.

**IV.     Conclusion**

For the foregoing reasons, Fidelity's Motion to Dismiss is DENIED. Wells Fargo's Motion for Summary Judgment is GRANTED, and BOA's Cross-Motion for Summary Judgment is DENIED.

The parties are directed to meet and confer and propose a schedule for the next phase of this case in a joint letter submitted to chambers within three weeks from the date of this order.

SO ORDERED.

Dated:  New York, New York
        January 31, 2013

_____
J. PAUL OETKEN
United States District Judge